Mary WEST, Plaintiff,

v.

The BOEING COMPANY, Stan Guhr, Jim Nease, Jim Snelling, Charlie Rosendale, Don Minge, and Dave Berry, Defendants.

Civ. A. No. 92–1575–MLB.

United States District Court,
D. Kansas.

April 1, 1994.

William L. Fry, Wichita, KS, for plaintiff.

Gaye B. Tibbets, Foulston & Siefkin, Wichita, KS, for defendants.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court on plaintiff Mary West's motion for reconsideration (Doc. 80) of the court's January 5, 1994 Memorandum and Order (Doc. 76) dismissing some of plaintiff's claims. 843 F.Supp. 670. Specifically, plaintiff moves the court to reconsider (1) its decision to dismiss plaintiff's Title VII failure to promote claim (42 U.S.C. § 2000e et seq.) and Equal Pay Act claim (29 U.S.C. § 206(d)) as untimely, and (2) its decision that 42 U.S.C. § 1981a(a)(1), part of the Civil Rights Act of 1991, does not create a separate and independent cause of action for employment discrimination plaintiffs.

## STANDARDS FOR MOTION TO RECONSIDER

■ The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990); *Taliaferro v. City of Kansas City,* 128 F.R.D. 675, 677 (D.Kan.1989). "[R]evisiting the issues already addressed 'is not the purpose of a motion to reconsider,' and 'advanc[ing] new

arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed' is likewise inappropriate." *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991).

## DISMISSAL OF TITLE VII FAILURE TO PROMOTE AND EQUAL PAY ACT CLAIMS

■ In its January 5 Memorandum and Order, the court granted defendant Boeing's motion to dismiss plaintiff's Title VII failure to promote and Equal Pay Act claims because *the particular incidents* which allegedly gave rise to both claims occurred outside the applicable statutory time period for filing such claims. Plaintiff argued, with respect to both claims, that these incidents were part of a series of "continuing violations" of Title VII and the Equal Pay Act by Boeing and were therefore actionable even though they occurred outside the statutory time limitations. The court rejected this argument, finding that "[t]he 'continuing violation' doctrine was simply not applicable to this case" because plaintiff had not alleged in her second amended complaint a series of *connected* Title VII or Equal Pay Act violations occurring both before and *during* the statutory period. (Doc. 76, pp. 6–9).

Plaintiff argues that the court should reconsider this ruling for two reasons. First, plaintiff claims that newly discovered evidence in this case "clearly demonstrates a continuing violation of Title VII and the Equal Pay Act" by Boeing. (Doc. 80, pp. 2–3). Plaintiff points to the testimony of Keith Newman given in a deposition taken July 23, 1993, more than a month after the last response was filed concerning Boeing's motion to dismiss.

Mr. Newman is a recently retired high level Manager of Boeing, whose testimony substantiates Plaintiff's claims of continuous sexual harassment, *sexual discrimination and unequal pay for women,* of Plaintiff in particular, and of the long-standing "Good Old Boy Network" in the Quality Department, which perpetuates discrimination against Females, unequal pay for

Females and discrimination against Minorities.

(Doc. 80, p. 4) (emphasis added). Second, plaintiff contends that, in dismissing its Title VII failure to promote and Equal Pay Act claims, the court inappropriately "failed to consider as true the allegations of Plaintiff in her Complaint (and the Proposed Pretrial Order), and generally treated the defendants' motions as motions for summary judgment, assuming the assertions of the defendants' as true." (Doc. 80, p. 4).

When considering a Rule 12(b)(6) motion to dismiss, like the one presented by Boeing in this case, the court is generally not to consider "matters outside the pleading[s]." Fed.R.Civ.P. 12(b); *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991). "The court's function is . . . to assess whether the plaintiff's complaint *alone* is legally sufficient to state a claim." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991). If the court does consider matters outside the pleadings, such as Mr. Newman's deposition, then the court must treat the motion to dismiss as a motion for summary judgment and give the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b); *see Miller*, 948 F.2d at 1565–66 (finding error in district court's failure to convert defendant's motion to dismiss into a motion for summary judgment and to comply with Rule 56).

In this case, Boeing's motion to dismiss (Doc. 45) relied solely on the allegations of plaintiff's second amended complaint (Doc. 34). The court thoroughly reviewed plaintiff's second amended complaint and accepted the allegations therein as gospel.[1] However, the complaint simply did not sufficiently manifest a connection between the alleged failure to promote and unequal pay incidents occurring *outside* the statutory time period and any similar conduct involving plaintiff occurring *within* the statutory time period. That is, in the court's view, the complaint could not be construed as having alleged a "continuing violation" with respect to plain-

tiff's Title VII failure to promote and Equal Pay Act claims. Hence, given that the claims were based on isolated incidents occurring outside the time limitations set forth in Title VII and the Equal Pay Act, plaintiff's complaint clearly failed to state a timely claim of failure to promote or unequal pay.

In her response to Boeing's motion to dismiss (Doc. 47), plaintiff did not even try to show the court how her second amended complaint could be construed has having alleged a continuing violation with respect to her failure to promote and unequal pay claims. Rather, she directed the court to deposition testimony and claimed that she could "document her continuing efforts to crash through the glass ceiling" imposed by Boeing. (Doc. 47, pp. 9–11). That is, while the court looked to plaintiff's second amended complaint—the appropriate thing to do when considering a motion to dismiss—plaintiff looked outside it. Clearly, it was plaintiff, not the court, who treated Boeing's motion to dismiss as a motion for summary judgment.

In *plaintiff's motion to reconsider, plaintiff* makes the same mistake that she made in her response brief. Once again, she tries to bolster her continuing violation claim by referring the court to deposition testimony, completely ignoring the deficiencies in her second amended complaint. (Doc. 80). In fairness to plaintiff and her counsel, most of the reported cases concerning the "continuing violation" issue appear to involve motions for summary judgment, not motions to dismiss. *See, e.g., Mathes v. Rice*, 1992 WL 181979 (10th Cir. July 29, 1992); *Allen v. Denver Public School Bd.*, 928 F.2d 978 (10th Cir.1991); *Gray v. Phillips Petroleum Co.*, 858 F.2d 610 (10th Cir.1988). This may have been the source of plaintiff's confusion.

In any event, the court believes it can resolve this problem by simply reconsidering Boeing's motion to dismiss the Title VII failure to promote and Equal Pay Act claims as a motion for summary judgment. In order

---

1. Plaintiff's accusation that this court "assum[ed] the assertions of the defendants' as true" is completely unfounded. (Doc. 80, p. 4). In fact, in its January 5 Memorandum and Order, the court expressly identified its duty to construe all well-pleaded facts in favor of plaintiff and denied defendant Boeing's motion to dismiss on at least one claim for the express reason that it was assuming the truth of *plaintiff's* allegations. (Doc. 76, pp. 4–6).

to do so, the court must give each side "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). The court is reasonably certain that most of that material—statements of controverted and uncontroverted fact, arguments, authorities, supporting affidavits, deposition excerpts, etc.—has already been presented. If that is the case, the court is confident that its decision on these matters will remain the same. Nevertheless, the court wants to dispose of this matter properly and ensure that plaintiff receives both a fair opportunity to present her positions and a thorough review of them. To that end, the court directs the parties to pursue this matter in the form of summary judgment. The order of dismissal of plaintiff's Title VII failure to promote claim (based on gender discrimination) and her Equal Pay Act claim (Doc. 76, pp. 6–9) is vacated. A motion for summary judgment has already been filed in this case, and Boeing need only add plaintiff's Title VII failure to promote and Equal Pay Act claims to that motion. Obviously, there may be additional bases for summary judgment on these claims, and those may be explored. Plaintiff can respond accordingly, and her response must comply strictly with the rules, including but not limited to Local Rule 206. The supplement to defendants' presently filed motion, as well as the supplemental response, shall cover only the Title VII failure to promote and Equal Pay Act claims, and neither pleading shall exceed fifteen (15) pages, not including exhibits. Any reply shall not exceed five (5) pages.[2]

---

2. The court is aware that it has not ruled on certain discovery motions. Some of the motions may be mooted by rulings herein; others may not. The court suggests that the supplemental motion for summary judgment not be filed until after the court has ruled on the discovery motions and additional discovery, if any, has been completed.

3. Disparate impact cases are apparently distinguished because *intent* to discriminate is not an element in such cases.

4. 42 U.S.C. § 1981, which was also affected by the Civil Rights Act of 1991, provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the

## DISMISSAL OF PLAINTIFF'S § 1981a CLAIM

■ Plaintiff seeks reconsideration of the court's order dismissing his separate cause of action under 42 U.S.C. § 1981a. The court ruled that § 1981a does not, either expressly or impliedly, create an additional, separate and independent cause of action for employment discrimination plaintiffs, but merely adds to the damages available to such plaintiffs under Title VII. (Doc. 76, pp. 9–10). For the parties' benefit, the court will take this opportunity to clarify its ruling.

42 U.S.C. § 1981a was signed into law by President Bush as part of the Civil Rights Act of 1991 on November 21, 1991. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 1991 U.S.C.C.A.N. (105 Stat.) 1071, 1072–74. It provides in relevant part:

### § 1981a. Damages in cases of intentional discrimination in employment

#### (a) Right of recovery

##### (1) Civil Rights

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact)[3] prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1981 of this title,[4] the complaining

security of persons and property as is enjoyed by white citizens...." In employment discrimination cases, § 1981 has come into play because of the contractual employment relationship. Under § 1981, the plaintiff can obtain not only equitable relief, but compensatory and punitive damages as well. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). However, § 1981 provides such recourse to victims of *racial* discrimination only; it does not extend to cases of *gender* and *religious* discrimination. The Civil Rights Act of 1991 is intended, in part, to rectify this disparity. *See* H.R.Rep. No. 102–40(I) & (II), 102nd Cong., 1st Sess. (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, at 603, 717–23; Robert Belton, *The Unfinished Agenda of the Civil Rights Act of 1991*, 45 Rutgers L.Rev. 921 (1993) ("Congress recognized the inherent unfairness in the avail-

party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

. . . .

**(b) Compensatory and punitive damages**

**(1) Determination of punitive damages**

A complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

**(2) Exclusions from compensatory damages**

Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964.

**(3) Limitations**

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,-000.[5]

. . . .

**(c) Jury trial**

If a complaining party seeks compensatory or punitive damages under this section—

(1) any party may demand a trial by jury; and

(2) the court shall not inform the jury of the limitations described in subsection (b)(3) of this section.

Just as the court stated in its January 5 Memorandum and Order and as other courts have recognized, section 1981a clearly "adds to the damages available to a plaintiff who shows, *under Title VII,* that she was the victim of intentional discrimination in employment." (Doc. 76, p. 10). *See Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir. 1994) ("[T]he Civil Rights Act of 1991 broadened the remedies available to successful Title VII litigants.") (citing 42 U.S.C. §§ 1981a, 2000e–5(g)).

Previously, under Title VII a prevailing plaintiff was entitled to injunctive relief, including reinstatement, backpay, lost benefits, attorneys' fees, certain litigation costs, and interest. Under the Civil Rights Act of 1991, a prevailing plaintiff in a claim for intentional discrimination under Title VII also may be entitled to: (1) compensatory damages, including those for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life; and (2) punitive damages if the plaintiff demonstrates that the employer en-

---

ability of compensatory and punitive damages in race discrimination cases brought under section 1981 but disallowed in the sex, religion and national origin cases brought under Title VII and the ADA."). Section 1981a(a)(1)'s exclusion of those who are already entitled to recover under

§ 1981 is obviously meant to prevent double recovery.

**5.** There are no similar caps on compensatory and punitive damages in *racial* discrimination claims under 42 U.S.C. § 1981.

gaged in discriminatory conduct with malice or with reckless indifference to the employee's federally protected rights.

Marian C. Haney, *Litigation of a Sexual Harassment Case After the Civil Rights Act of 1991,* 68 Notre Dame L.Rev. 1037 (1993).

Prior to the Civil Rights Act of 1991, victims of sexual harassment had recourse to only equitable remedies. 42 U.S.C. § 20003(5)(g) (1988) (establishing courts' remedial powers as "such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate."). As a result, victims of sexual harassment who did not experience tangible economic loss were precluded from recovering monetary damages under title VII....

The Civil Rights Act of 1991 expanded the remedies for sexual harassment by allowing victims to recover compensatory and punitive damages. 42 U.S.C. § 1981a (Supp. III 1991).

Sara Needleman Kline, *Sexual Harassment, Wrongful Discharge, and Employer Liability: The Employer's Dilemma,* 43 Am. U.L.Rev. 191, n. 10 (1993). Hence, consistent with the court's January 5 Memorandum and Order, if plaintiff ultimately succeeds on her sexual harassment or other gender discrimination claims against Boeing, she may pursue both equitable relief under Title VII itself and compensatory and punitive damages under an expansion or extension of Title VII, 42 U.S.C. § 1981a(a)(1).[6]

The parties have apparently misconstrued the court's January 5 Memorandum and Order as holding that plaintiff *cannot* pursue the remedies made available by section 1981a. That is not the case. The court simply interpreted section 1981a(a)(1) as an additional "remedial provision" of Title VII, rather than as a separate and independent statute creating a separate and independent cause of action. That interpretation is supported by section 1981a(a)(1)'s own introductory language: *"In an action brought under section 706 or 717 of the Civil Rights Act of 1964."* The *"action"* is brought under Title VII; the *remedies* are found in both Title VII and section 1981a. Unlike 42 U.S.C. § 1981, there is no separate violation of § 1981a; there is only a violation of Title VII which entitles the victim of discrimination to the damages provided for in Title VII and section 1981a.[7]

Thus, in this case, plaintiff's cause of action for sexual harassment and gender discrimination is founded *solely* on Title VII; her *prayer for relief,* however, is founded on *both* Title VII, 42 U.S.C. § 2000e–5, and an extension of Title VII, 42 U.S.C. § 1981a(a)(1). The court's interpretation is further supported by references in the legislative history of the Civil Rights Act of 1991 to "the need to permit the recovery of damages *under Title VII,*" "strengthening" and "expanding" *"Title VII's* remedial scheme," and "adding a damages remedy *to Title VII."* H.R.Rep. No. 102–40(I) & (II), 102nd Cong., 1st Sess. (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, at 602, 608, 610–11, 717, 722 (emphasis added).

Admittedly, at least one court appears to take a different view of § 1981a's relationship to Title VII. *Davis v. San Francisco,* 976 F.2d 1536, 1556 (9th Cir.1992) ("[T]he damages provisions of the new Act ... do not represent amendments to Title VII, but rather add a new section to the Reconstruction-era civil rights statutes, to be codified at 42 U.S.C. § 1981A."). In reality, however, section 1981a is *not* like other Reconstruction-era civil rights statutes. (See discussion

---

**6.** It is unclear if conduct supporting plaintiff's sexual harassment and gender discrimination claims occurred after the effective date of the Civil Rights Act of 1991, November 21, 1991. The court assumes, for purposes of this Memorandum and Order, that the Civil Rights Act of 1991 would apply.

**7.** Violations of 42 U.S.C. § 1981 are separate and independent from Title VII. § 1981 con-

tains substantive provisions of its own. A plaintiff can bring an action based solely on § 1981; but § 1981a can only be invoked in conjunction with Title VII (§ 1981a(a)(1)) or the Rehabilitation of Americans with Disabilities Acts (§ 1981a(a)(2)). Hence, plaintiff's cause of action under § 1981, predicated on her claim of *racial* discrimination, is separate and independent in nature. Her asserted action under § 1981a is not.

*supra* distinguishing 42 U.S.C. § 1981, a Reconstruction-era statute, from 42 U.S.C. § 1981a). Section 1981a cannot stand on its own. It is wholly dependent on Title VII and other substantive Acts. Section 1981a(a)(1) merely expands the remedies available under Title VII and is properly viewed as an extension of and amendment thereto. It should not be interpreted otherwise simply because it happens to appear in a place different than Title VII in the United States Code.

In her motion to reconsider, as in her response to defendants' motion to dismiss, plaintiff quotes an interpretive memorandum from Congressmen Edwards referring to "different independent causes of action" under Sections 1981 and 1981a. (Doc. 80, pp. 4–5; Doc. 47, pp. 5–7). The court interprets "independent" as a reference to the distinction between § 1981 and § 1981a, not a distinction between § 1981a and Title VII. If Congressmen Edward's *was* intending to characterize § 1981a as independent from Title VII, then Representative Edwards was just plain wrong. As seen *supra*, there is nothing independent about § 1981a! The plain language of § 1981a(a)(1) indicates dependence on Title VII. If entitlement to compensatory and punitive damages under 42 U.S.C. § 1981a(a)(1) is expressly made dependent on whether the plaintiff succeeds on her sexual harassment or other gender discrimination claims under Title VII, how can her asserted action under 42 U.S.C. § 1981a(a)(1) be considered separate and independent?

Plaintiff also directs the court's attention to reported decisions in which section 1981a was found to contain provisions "substantive in nature." *Steinle v. Boeing Co.*, 785 F.Supp. 1434, 1444 (D.Kan.1992). But whatever substance section 1981a may have, it remains inextricably connected to Title VII. That is, the substance of plaintiff's *cause of action* entitling him to relief under section 1981a(a)(1) is wrought in Title VII.

For the above reasons, the court stands by its original ruling that plaintiff cannot plead a cause of action under § 1981a separate and independent from her cause of action under Title VII.

**IT IS ACCORDINGLY ORDERED** that plaintiff's motion to reconsider is hereby granted in the following respect: the dismissals of plaintiff's Title VII failure to promote claim and her Equal Pay Act claim are vacated. Plaintiff's motion to reconsider the dismissal of her cause of action under § 1981a is hereby denied.